**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

MARIA MORALES-OPETT,

Plaintiff,

vs.

COUNTY OF FRESNO, et al.,

Defendants.

_____________________________________/

CASE NO. CV F 02-6626 LJO CONSOLIDATED WITH CASE NO. CV F 02-6627

**ORDER TO AWARD DEFENSE COSTS AND TO DENY RECONSIDERATION**
(Docs. 197, 255.)

**INTRODUCTION**

In this consolidated 42 U.S.C. § 1983 ("section 1983") and related action alleging execution of an overbroad search warrant, excessive force and related claims, 24 defendant investigators of the District Attorney's ("D.A.'s") office of defendant County of Fresno ("County")[1] seek a $7,425 attorney fees award to defend the claims of plaintiffs Carol Dela Torre ("Ms. Dela Torre") and Maria Morales-Opett ("Ms. Morales-Opett"). Plaintiffs seek reconsideration of this Court's February 28, 2005 order which determined that the ancillary defendants are entitled to defense costs. This Court considered the amount of a defense costs award and plaintiffs' reconsideration motion on the record and VACATES the November 17, 2008 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DENIES plaintiffs reconsideration and AWARDS the ancillary defendants $4,185 defense costs.

---

[1] The defendant D.A. investigators who seek defense costs are Teresa Alvarez, Kathleen Bauer, Lindasue Brock, Scot Cheney, Sam Cortina, Lee Cotter, Francisco Esquivel, Amarjeet Gill, Robert Gottselig, Steven Hatch, Lorine Haynes, Jack Jones, James Kantarakis, Joel Nichols, James Orth, Jesus Perez, Fernando Reyna, John Smith, Fred Starks, John Swenning, Stacey Thomas, John Waide, Robert Weigandt, and Xong Vue Yang. These defendants will be referred to collectively as the "ancillary defendants." The remaining nine defendant D.A. investigators were involved in pre-search investigation or surveillance and/or entry and search of the home of Ms. Dela Torre and Ms. Morales-Opett (collectively "plaintiffs").

## BACKGROUND

### Summary

During late 2001 and early 2002, plaintiffs shared a Fresno residence, and defendant D.A. investigators Sara Segler ("Ms. Segler"), Robert Pole ("Mr. Pole"), Lisa Biggs ("Ms. Biggs") and Celia Reyes-Zamora ("Ms. Reyes-Zamora") conducted a criminal investigation into misappropriation/embezzlement of non-profit and/or governmental funds by management of Genesis, Inc. ("Genesis"), a non-profit corporation that provides residential care treatment, foster care, and adoption services for abused, neglected and delinquent children. Ms. Dela Torre served as Genesis' assistant executive director for foster family placements. Ms. Segler prepared a January 28, 2002 one-page search warrant and an accompanying 53-page affidavit to search 17 locations, including plaintiffs' home. During the early morning of January 29, 2002, Ms. Biggs and defendant D.A. investigators Terrence Holly ("Mr. Holly"), Rod Spaulding ("Mr. Spaulding"), Maria Leal ("Mr. Leal") and Shari Hall ("Ms. Hall") entered and secured plaintiffs' home, and Mr. Holly, Mr. Spaulding and Mr. Leal conducted a 4½ hour search of plaintiffs' home and seized property.

Mr. Holly, Mr. Spaulding and defendant D.A. investigator Clark Crapo ("Mr. Crapo") conducted pre-search surveillance for the Genesis investigation. Defendant D.A. investigators Jack Jones ("Mr. Jones") and Lorine Haynes ("Ms. Haynes") conducted surveillance of plaintiffs' home just prior to and during the search and are included as ancillary defendants. The remaining ancillary defendants had no involvement with the Genesis investigation or search warrant preparation and issuance, did not assist with the search of plaintiffs' residence, and focused on the searches of other locations. Plaintiffs note that 11 of the ancillary defendants were involved in the search of the building which included Ms. Dela Torre's business office.

### Plaintiffs' Claims

On December 24, 2002, plaintiffs filed their actions[2] to allege section 1983 and related state claims. In their complaints, plaintiffs allege each defendant D.A. investigator "participated in the coordinated plan to execute the search warrant" and "aided, incited, and conspired to use such force to

[2] This Court's September 28, 2004 order consolidated plaintiffs' respective actions.

harass and embarrass, and to unreasonably detain" plaintiffs to result in federal and California constitutional violations. Plaintiffs contend that all defendant D.A. investigators are subject to section 1983 liability as participants and conspirators in execution of the facially overbroad search warrant. Plaintiffs further contend each defendant D.A. investigator is liable for unlawful entry into plaintiffs' residence under authority of a facially overbroad search warrant.

In October 2004, plaintiffs filed their original summary adjudication motion to adjudicate that each defendant D.A. investigator is liable under section 1983 for unlawful entry into and execution of an overbroad search warrant at plaintiffs' home and is not entitled to qualified immunity for participation in execution of an overbroad search warrant lacking particularity. This Court's November 30, 2004 order on plaintiffs' original summary adjudication motion concluded that plaintiffs had failed to produce "evidence sufficient to establish section 1983 liability of each defendant D.A. investigator based on participation in a coordinated search warrant plan and execution" and "evidence that each defendant D.A. investigator knew or could have known the search warrant lacked probable cause to search plaintiff's home." The order further noted that only Mr. Spaulding, Mr. Holly, Ms. Hall, Ms. Biggs and Mr. Leal "executed the search warrant at plaintiffs' home rendering irrelevant as to plaintiffs' claims the actions of most of the other defendant D.A. investigators." In addition, the order concluded that plaintiffs fail to demonstrate sufficient evidence to cut off qualified immunity to defendant D.A. investigators who were not involved in pre-search investigation.

**Defense Requests To Dismiss Ancillary Defendants**

With his December 2, 2004 letter, defense counsel requested plaintiffs' counsel to dismiss the ancillary defendants since they participated in neither the underlying Genesis investigation nor entry or search of plaintiffs' home. In his December 6, 2004 letter, plaintiffs' counsel denied the request. With his December 7, 2004 letter, defense counsel again requested plaintiffs' counsel to dismiss the ancillary defendants. In his December 8, 2004 letter, plaintiffs' counsel again denied the request and noted: "I do not wish to continue to argue the law with you. I understand that some of these issues may have to be addressed on appeal. That is what the Courts of Appeal are for." With his December 10, 2004 letter, defense counsel asked plaintiffs' counsel to "reconsider dismissing the ancillary defendants, or at the very least, dismissing those claims that do not relate to them." In his December 13, 2004 letter,

plaintiffs' counsel agreed to dismiss without prejudice only defendant D.A. Kevin Maekawa, who is deceased.

**Defendants' Summary Adjudication Motion**

On January 25, 2005, the ancillary and other defendants filed their motion for adjudication of issues to gut plaintiffs' claims. In conjunction with their summary adjudication motion, the ancillary defendants filed their defense costs motion under 42 U.S.C. § 1988 ("section 1988") on grounds that plaintiffs' federal claims are frivolous, unreasonable and groundless.

This Court's February 28, 2005 order granted the ancillary defendants summary adjudication on plaintiffs' claims. In particular, this Court concluded that the ancillary defendants did not participate in the search warrant and affidavit preparation and are not liable for claims arising from preparation and issuance of the search warrant. This Court further determined the ancillary defendants' involvement played no integral part in the entry and search of plaintiffs' home to absolve the ancillary defendants of liability for claims regarding the entry and search.

**Appeal Of Summarily Adjudicated Issues**

On March 23, 2005, this Court entered its F.R.Civ.P. 54(b) final judgment on the summarily adjudicated issues and order to certify an interlocutory appeal of the summarily adjudicated issues. The Ninth Circuit Court of Appeals entertained the interlocutory appeal and issued its May 2, 2006 decision to affirm the summarily adjudicated issues, including those in favor of the ancillary defendants.[3] After remand, this action remained stayed in this Court until resolution of Ms. Dela Torre's underlying criminal action.

**The Ancillary Defendants' Successful Costs Motion**

This Court issued its February 28, 2005 order ("defense costs order") to determine that the ancillary defendants are entitled to defense costs under 42 U.S.C. 1988(b) as the prevailing parties on plaintiffs' section 1983 claims. The defense costs order provides in pertinent part:

> Plaintiffs have failed to establish grounds for claims against the ancillary defendants. This Court denied plaintiffs' summary adjudication motions that each

---

[3] Although the Ninth Circuit Court of Appeals did not address specifically summary adjudication in favor of the ancillary defendants, the Ninth Circuit explained: "The balance of plaintiffs' contentions either depend upon us accepting one of the arguments rejected above or are so curtly briefed as to be waived."

> individual defendant separately is liable under section 1983 for unlawful entry into plaintiffs' home and execution of an overbroad search warrant. This Court further denied plaintiffs' summary adjudication motion that each individual defendant is not entitled to qualified immunity for participation in execution of the overbroad search warrant lacking particularity. Nonetheless, plaintiffs continued to pursue their claims against the ancillary defendants. Defendants proceeded with their summary adjudication motion, and this Court granted the ancillary defendants summary adjudication on plaintiffs' section 1983 claims. This Court concluded that the ancillary defendants did not participate in the search warrant and affidavit preparation and are not liable for claims arising from preparation and issuance of the search warrant. This Court limits plaintiffs' excessive force and detention claims to [Mr. Spaulding, Mr. Holly, Ms. Hall, Ms. Biggs and Mr. Leal].
>
> Plaintiffs have made no meaningful, intelligent arguments to hold onto the ancillary defendants in this action. . . .
>
> The facts reveal the ancillary defendants had no contact with plaintiffs. Nearly all of the ancillary defendants had no connection to plaintiffs and did not learn of the Genesis investigation until just prior to the January 29, 2002 searches of the multiple locations. Plaintiffs' pursuit of claims against the ancillary defendants became frivolous, unreasonable and groundless when the ancillary defendants' disconnection to plaintiffs became reasonably apparent. From that point forward, the ancillary defendants are entitled to costs to defend plaintiffs' section 1983 claims.

The defense costs order requires the ancillary defendants to demonstrate their "section 1988(b) costs to continue to defend plaintiffs' section 1983 claims arising from the time when continued pursuit of section 1983 claims against the ancillary defendants became frivolous, unreasonable and groundless."

Due to the appeal and subsequent stay of this action, the ancillary defendants took no further action on the defense costs order until the recent lift of the stay of this action. On September 11, 2008, defense counsel filed his declaration to contend that the ancillary defendants' November 30, 2004 summary adjudication motion "is an appropriate measure in this circumstance" and to request a $7,425 defense costs award. Defense counsel estimates he devoted 55 hours at his $135 hourly rate to prepare the ancillary defendants' portion of defendants' summary adjudication papers. Defense counsel breaks down his time as follows:

1. 48 hours to prepare each of the 24 ancillary defendant's declarations (two hours per declaration) to support summary adjudication with such time including reviewing discovery, interviewing and consulting each ancillary defendant, and revising the declarations;
2. Three hours of legal research; and
3. Four hours to prepare summary adjudication papers.

On September 11, 2008, plaintiffs filed their renewed motion to reconsider the defense costs award. As such, the issues before this Court are:

1. Whether reconsideration of the defense costs award is warranted; and
2. The amount of the defense costs award if reconsideration is unwarranted.

**DISCUSSION**

**Reconsideration Standards**

Reconsideration is appropriate when the district court is presented with newly discovered evidence, committed clear error, or there is an intervening change in controlling law. *School District No. 1J, Multnomah County, Oregon v. A C and S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993), *cert. denied*, 512 U.S. 1236, 114 S.Ct. 2742 (1994). A reconsideration motion is restricted:

> Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. *Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the . . . motion. . . . Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.*

*Publisher's Resource, Inc. v. Walker Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quoting *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665-666 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984) (emphasis in original)); *see Novato Fire Protection Dist. v. United States*, 181 F.3d 1135, 1142, n. 6 (9th Cir. 1999), *cert. denied*, 529 U.S. 1129, 120 S.Ct. 2005 (2000). Reconsideration should not be used "to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *See Brambles USA, Inc. v. Blocker*, 735 F.Supp. 1239, 1240 (D. Del. 1990). Under this Court's Local Rule 78-230(k), a party seeking reconsideration must demonstrate "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion" and "why the facts or circumstances were not shown at the time of the prior motion."

Plaintiffs appear to pursue reconsideration of the defense costs award based on clear error on primary grounds that:

1. Plaintiffs' counsel had insufficient time to respond originally to the defense costs motion in that he was compelled to devote his efforts to respond to defendants' summary adjudication motion;

2. Defendants failed to comply with Local Rule 54-293(b) regarding the defense costs motion;

3. The County has paid the ancillary defendants' attorney fees;

4. Eleven of the ancillary defendants searched Ms. Dela Torre's Genesis office;

5. Plaintiffs pursued "novel" issues as to the ancillary defendants; and

6. The ancillary defendants did not challenge plaintiffs' "conspiracy" claim at the time of the defense F.R.Civ.P. 12(b)(6) motion to dismiss.

**Inability To Respond To Defense Costs Motion**

Plaintiffs ignore that on February 25, 2005, this Court granted their counsel more than an hour to argue without interruption plaintiffs' points, including those as to the defense costs motion. Nonetheless, even if plaintiffs' counsel lacked sufficient time to respond to the defense costs motion, plaintiffs' reconsideration motion has given plaintiffs a further opportunity to raise points. Plaintiffs further ignore that they could have avoided the defense costs motions and summary adjudication as to the ancillary defendants had they accepted defense counsel's offer to dismiss the ancillary defendants. Moreover, the ancillary defendants correctly note that plaintiffs did not seek an extension to address the defense costs to mitigate purported disadvantage to address it along with the defense summary adjudication motion.

**Local Rule 54-293(b)**

Plaintiffs complain, again, that defendants failed to comply with Local Rule 54-293 on attorney fee awards by seeking an award prematurely. The defense costs order rejected plaintiffs' complaints and noted that "the local rule sets a **deadline** for the motion and does not render the ancillary defendants' motion premature." Although in a perfect world the defense costs motion could have been delayed until after the summary adjudication order, the purported deficiencies have been cured with the passage of time and defense counsel's September 11, 2008 declaration. The ancillary defendants are the prevailing parties and entitled to seek a defense costs award.

**Novel Issues**

Plaintiffs contend that attorney fees "are not authorized when a plaintiff is launching a good faith effort to advance a novel theory under Section 1983 jurisprudence." Plaintiffs defend their claims by

noting that they sued only defendants who participated in the coordinated plan to search multiple locations simultaneously and that defendants acknowledged that the searches "were interrelated and designed to help prevent interference at each other location." The ancillary defendants respond that plaintiffs attempt to "re-litigate" issues and make "essentially the same arguments" to oppose originally the defense costs motion.

Plaintiffs are correct that their claims against the ancillary defendants are novel but wrongly suggest that they are "based upon a good faith extension of the law." Plaintiffs' claims focus on their home search and seizure. Searches of other locations are immaterial despite plaintiffs' notion that the searches of multiple locations were simultaneous to avoid interference. Plaintiffs attempt to link the ancillary defendants to their home search and seizure is not a good faith extension of the law. If the claims against the ancillary defendants had a breath of foundation, certainly the Ninth Circuit would have commented on them. The fact that 11 ancillary defendants searched the Genesis office is irrelevant in that plaintiffs' claims address their home and claims of an overbroad search warrant have been decided in defendants' favor. The fact that plaintiffs did not sue individuals "who came along later to help with the Genesis searches" suggests that plaintiffs realized the boundaries of their claims but ignored them as to the ancillary defendants. Plaintiffs' criticism of the ancillary defendants' failure to settle makes no sense in light of the clear lack of merit of the claims against them.

In their recently filed papers, plaintiffs question whether this Court considered conspiracy liability under section 1983. This Court assures plaintiffs that it considered all points raised by the parties. As noted above, reconsideration is not the place to raise new issues, and this Court lacks an obligation to resurrect plaintiffs' claims on grounds not raised timely by plaintiffs.

Also in their recently filed papers, plaintiffs appear to recast and in turn narrow their integral participation claims to the point of ignoring that they pursued claims against the ancillary defendants regarding pre-search warrant investigation and search warrant preparation. The current focus of plaintiffs' integral participation claims is that the ancillary defendants "knew" that other defendants would search plaintiffs' residence and detain plaintiffs at gunpoint. Plaintiffs' points regarding a "conspiracy to use excessive force" are unavailing despite the parties' comments at the motion to dismiss hearing. Plaintiffs point to no evidence to support the ancillary defendants' pertinent knowledge or

conspiracy, and this Court is aware of none. Moreover, this Court views plaintiffs attempt to reinvent their integral participation claims as a last resort to bolster claims which the Ninth Circuit found unworthy of mention.

In sum, plaintiffs have failed to demonstrate clear error to warrant reconsideration. Plaintiffs' reconsideration motion rehashes previous arguments and raises points which plaintiffs could have raised when the ancillary defendants first pursued the motion. As such, this Court turns to amount of defense costs to award the ancillary defendants.

**Defense Costs Award**

The ancillary defendants seek $7,425 (55 hours multiplied by $135 hourly rate) for defense costs paid by the County.[4] The $135 hourly rate is extremely reasonable, and neither this Court nor plaintiffs quibble with it. However, this Court and plaintiffs question devotion of 48 hours to prepare the generally simple declarations of the ancillary defendants. Although the declarations were many in number, they addressed uncomplicated factual issues. As such, devotion of one hour per declaration is more appropriate, a point with which plaintiffs agree. Defense counsel reasonably devoted seven hours for legal research and to prepare summary adjudication papers for the ancillary defendants.

A proper defense costs award is $4,185 for the ancillary defendants.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DENIES plaintiffs reconsideration of the defense costs award;
2. AWARDS the ancillary defendants a $4,185 defense costs award under 42 U.S.C. § 1988(b); and
3. ORDERS plaintiffs, no later than December 1, 2008, to pay the County $4,185.[5]

IT IS SO ORDERED.

**Dated: November 6, 2008** **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiffs' point that the County paid the ancillary defendants' costs is irrelevant. The relevant point is that costs were incurred to defend plaintiffs' meritless claims against the ancillary defendants.

[5] Although the award is against plaintiffs, this Court will leave to plaintiffs and their counsel the determination whether their counsel will contribute to pay all or part of the award.